UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW MIHALY,
    *Plaintiff*,
    *v.*
TOWN OF TRUMBULL WATER POLLUTION
CONTROL AUTHORITY, et al.,
    *Defendants.*

Civil No. 3:12cv1157 (JBA)

June 14, 2013

**RULING ON MOTION TO DISMISS**

On November 27, 2012, Plaintiff Matthew Mihaly filed an Amended Complaint [Doc. # 23],[1] alleging federal and state constitutional violations against the Town of Trumbull Water Pollution Control Authority (the "WPCA"), and the individual members of the WPCA, Joseph Solarnene, Jeanine Maietta Lynch, Laura Pulle, Ennio DeVitta, Timothy Hampford, Karen Egri, and Kenneth Skov, collectively "Defendants." Defendants move to dismiss [Doc. #27] all of Plaintiff's claims pursuant to Federal Rule

---

[1] The individual causes of action alleged in each count of the Amended Complaint are duplicative in some respects, and thus, based on clarification from Plaintiff's counsel at oral argument, the Amended Complaint will be construed as followed:  (1) Count One provides the factual support for Plaintiff's request for declaratory judgment, and does not allege an individual cause of action; (2) Count Two alleges an equal protection violation pursuant to 42 U.S.C. § 1983 and Article First, § 20 of the Connecticut Constitution; (3) Count Three alleges a due process violation pursuant to Article First, §§ 8 and 10 of the Connecticut Constitution; (4) Count Four alleges a procedural due process claim pursuant to 42 U.S.C. § 1983; (5) Count Five alleges a takings claim pursuant to 42 U.S.C. § 1983 and Article First, § 11 of the Connecticut Constitution; (6) Count Six alleges a state common law tort claim for reckless disregard; (7) Count Seven alleges a civil rights conspiracy pursuant to 42 U.S.C. § 1985; (8) Count Eight alleges a *Monell* claim for municipal liability against the WPCA; (9) Count Nine alleges a state law claim for municipal indemnification pursuant to Conn. Gen. Stat. § 7-465; and (10) Count Ten alleges a state law claim for violation of Conn. Gen. Stat. § 8-24.

of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.[2] For the following reasons, Defendants' motion to dismiss is granted.

## I.     Background

Plaintiff is a resident of the Town of Trumbull, Connecticut (the "Town"), and owns property at 116 Jerusalem Hill Road in that municipality. (Am. Compl. [Doc. # 23] ¶ 1.)  On November 8, 2002, the WPCA issued a Notice of Public Hearing, announcing a proposed sewer extension that included Plaintiff's property, which previously had been serviced by a septic tank system.  (Id. ¶¶ 2, 4–5.)  During the public hearing on the plan, which took place on November 22, 2002 and was attended by Plaintiff, Defendants presented a map of the 1967 sewerage system study reflecting a gravity-fed sewer line for Jerusalem Hill Road.  (Id. ¶¶ 7–8, 10.)  Defendants also informed members of the public that the Town might take easements through their property in order to effectuate the sewer extension plan.  (Id. ¶ 9.)   Defendants did not mention the possibility that a grinder-pump sewer system might be used to connect the Jerusalem Hill Road neighborhood to the Town's sewer system.  (Id. ¶ 11.)  On or about August 31, 2004, the firm hired by the Town to design the sewer extension plan modified the proposed plan to reflect that the properties at the end of Jerusalem Hill Road, including Plaintiff's property, would be serviced by a grinder-pump sewer system, rather than a gravity-fed sewer system, as was previously discussed at the public hearing on the project.  (Id. ¶ 12.)

---

[2] On January 31, 2013, the Court granted [Doc. # 28] Defendants' motion to dismiss absent objection because Plaintiff failed to file an opposition.  However, on February 5, 2013, Plaintiff moved [Doc. # 31] to set aside judgment and reopen the case.  At the same time, Plaintiff filed his opposition [Doc. # 32] to the motion to dismiss.  The Court granted [Doc. # 36] the motion to set aside judgment and to reopen the case, and the motion to dismiss was reactivated.

Defendants were provided with copies of the modified plan on February 14, 2005, September 24, 2008, December 11, 2008, and January 16, 2009. (*Id.* ¶ 13.)

On June 8, 2011, Plaintiff received a letter from the WPCA that included a December 7, 2010 letter explaining the proposed grinder pump system and a proposed Grinder Pump License Agreement. (*Id.* ¶ 14; *see also*, Grinder Pump License Agreement, Ex. A to Am. Compl.) The December 7, 2010 letter, which was also sent to other property owners on Jerusalem Hill Road, explained that a grinder pump would need to be installed in Plaintiff's septic tank in order to connect Plaintiff's property to the Town's sewer system, advised that Plaintiff would be responsible for a part of the costs for this installation, and informed Plaintiff that he must sign the Grinder Pump License Agreement enclosed within forty-five days or risk imposition of the entire cost of the renovations himself. (Am. Compl. ¶¶ 16–19.) The Grinder Pump License Agreement required Plaintiff to bear the cost of maintenance and repair of the grinder pump system, to grant a permanent right of access to the Town, and to hold the Town harmless, in addition to prohibiting Plaintiff from making any modifications to his property that would impede the grinder pump system's functioning. (*Id.* ¶¶ 20–21.) The letter made no mention of the possibility of any alternative plans to connect Plaintiff's property to the Town's sewer system, and Defendants held no further public hearings on the proposed sewer extension plan. (*Id.* ¶¶ 23–24.)

Subsequent to receiving notice of these proposed changes to the sewer extension plan, Plaintiff retained a sewer engineering expert to research alternatives to installing the grinder pump system on his property (*id.* ¶ 27), and Plaintiff presented the resulting alternative plans at public meetings of the WPCA held on October 26, 2011, December 14, 2011, January 25, 2012, and March 28, 2012 (*id.* ¶ 28). These studies showed that it

was possible to employ a gravity-fed sewer system on Plaintiff's property. (*Id.*) At Defendants' request, Plaintiff furnished cost estimates for his proposal based on bids from the Town's contractor. (*Id.* ¶¶ 29–31.) These estimates showed that it would be possible to effectuate Plaintiff's proposal without significant additional expense to the town. (*Id.*) Plaintiff's proposal was similar to the system provided to the residents of Scenic Hill Road, who were not required to install grinder pump systems on their property and for whom the Town constructed a pumping station. (*Id.* ¶ 32.) Defendants rejected Plaintiff's proposal without further opportunity for public comment (*id.* ¶¶ 33–34), and rejected Plaintiff's requests for relief from Defendants' demands regarding the installation of a grinder pump system on his property (*id.* ¶ 35). On November 7, 2012, the WPCA sent an additional notice to Plaintiff informing him that it proposed to assess Plaintiff the sum of $28,339.00 to finance the completion of the sewer extension project.[3] (*Id.* ¶ 37; *see also* Nov. 7, 2012 Letter, Ex. B to Am. Compl.) The notice also indicated that a public hearing would be held on the proposed assessment on November 20, 2012, without the opportunity for comment by the public. (Am. Compl. ¶ 37.)

---

[3] In his opposition, Plaintiff states that the Town issued a notice of final assessment in this amount on December 19, 2012, and that he has appealed the assessment in state court pursuant to Conn. Gen. Stat. § 7-250. That suit remains pending.

**III.   Discussion**[4]

As a preliminary matter, Defendants have attached copies of the minutes from the WPCA meetings at which Plaintiff presented his alternative sewer proposals, and argue that the Court should consider these documents in ruling on the motion. The Second Circuit has recognized that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment." *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1992). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). At oral argument, Plaintiff's counsel

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

clarified that he objected to the Court's consideration of these documents because they did not constitute sworn testimony and did not represent a full and accurate representation of what was discussed during the meetings. Therefore, the Court will not consider the meeting minutes in ruling on Defendants' motion to dismiss.

### A. Federal Equal Protection Claim (Count Two)

Plaintiff alleges a "class of one" equal protection claim arising from Defendants' refusal to install a gravity-fed sewer system on Jerusalem Hill Road, when the town provided a similar system to residents on Scenic Hill Road. Under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), class-of-one claims are viable where a plaintiff alleges that she has been treated differently from other similarly situated people and that there was no rational basis for this differential treatment. The Second Circuit has explained that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("As the Rustons fail to allege that properties sufficiently similar to theirs were treated more favorably by either the Village or the Town, they have failed to state a 'class of one' equal protection claim."). In *Ruston*, the Second Circuit explained that

> [T]o succeed on a class–of–one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

610 F.3d at 59–60.

Although Plaintiff alleges that the residents of Scenic Hill Road are similarly situated to him, and that Defendants provided those residents a gravity-fed sewer system

with a pumping station, similar to the alternative plan Plaintiff presented to the WPCA (*see* Am. Compl. ¶¶ 31–32), he provides no factual information as to the manner in which the properties on Scenic Hill Road are similar to his property, other than his conclusory allegation that the two groups of residents are similarly situated.  (*See id.*)  In its letter to Plaintiff notifying him that he would need to install a grinder pump system, the WPCA explained the need for the system as follows:

> Based on the design of the sewer system, your property is lower in elevation than the main line sewer to be installed in the street.  Wastewater will not be able to flow by gravity from your property to the sewer main.  It will be necessary to install a pump into your existing septic tank.  This will allow your house to be serviced by the sanitary sewer system.

(Dec. 7, 2010 Letter, Ex. A to Am. Compl.)  Plaintiff does not allege that the properties on Scenic Hill Road had a similarly low elevation such that the installation of grinder pumps would be required to connect those properties to the sewer system.  Furthermore, the notice sent out by the WPCA indicates that dozens of other residents, including other residents on Jerusalem Hill Road were required to install grinder pumps.  (*See* Notice of Public Hearing, Ex. A to Am. Compl.)  Because Plaintiff does not allege that Scenic Hill Road had a similar elevation to Jerusalem Hill Road or that the Scenic Hill Road properties would have otherwise needed to install grinder pumps, Plaintiff has not alleged sufficient facts to show that no rational person could regard the circumstances of Plaintiff and the Scenic Hill Road residents as different.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's federal class-of-one equal protection claim.

### B.    Federal Due Process Claim (Count Four)

Plaintiff claims that by requiring him to install a grinder pump system on his property, Defendants effectively required him to use his property as a part of the municipal sewer system, thereby violating his right to due process.  At oral argument,

7

Plaintiffs' counsel clarified that Plaintiff was asserting a procedural due process, rather than a substantive due process, claim.

In order to establish a procedural due process violation, a plaintiff must "(1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir. 1989). The gravamen of Plaintiff's Amended Complaint appears to be that he has a protected property interest in a gravity-fed sewer system, as opposed to a grinder pump sewer system. "Property interests are created, and their dimensions defined, by state law." *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985)). "A state-created entitlement that cannot properly be eliminated except for cause is a property right of which the holder may not be deprived without procedural due process." *Id.* (citing *Memphis Gas & Water Div. v. Craft,* 436 U.S. 1, 9 (1978)). However, "if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." *Id.* at 1202 (citing *Schwartz v. Mayor's Comm. on the Judiciary of the City of New York,* 816 F.2d 54, 56 (1987); *Sullivan v. Town of Salem,* 805 F.2d 81, 84 (2d Cir. 1986)).

The actions of water pollution control authorities in Connecticut are governed by Conn. Gen Stat. § 7-247, which states:

> Any municipality by its water pollution control authority may acquire, construct and operate a sewerage system; may enter upon and take and hold by purchase, condemnation or otherwise the whole or any part of any real property or interest therein which it determines is necessary or desirable for use in connection with any sewerage system . . .

Conn. Gen. Stat. § 7-247(a).  The Connecticut Supreme Court has recognized that "[u]nder the terms of th[is] statute, a municipality has wide discretion in connection with the decision to supply sewerage." *Forest Walk, LLC v. Water Pollution Control*, 291 Conn. 271, 282 (2009) (internal citations and quotations omitted).  "Although this discretion is not absolute, the date of construction, the nature, capacity, location, number and cost of sewers and drains are matters within the municipal discretion with which the courts will not interfere, unless there appears fraud, oppression or arbitrary action." *Id.* (internal citations and quotations omitted).  "This discretion extends to the construction or extension of public sewer facilities." *Id.* at 283.

The Second Circuit has previously held that due to the high level of discretion afforded to a WPCA under Connecticut law, individuals do not have a constitutionally protected property right to a sewer-extension permit or a sewer-connection permit.  *See Landmark Dev. Grp., LLC v. Town of East Lyme*, 374 F. App'x 58, 60 (2010) (plaintiffs had no legitimate claim of entitlement to such permits because Connecticut law gave defendants discretion to deny them (citing *Forest Walk*, 291 Conn. at 282)).  Similarly, in *Straw Pond Assocs., LLC v. Water Pollution Control Authority of Middlebury*, No. CV084015126S, 2011 WL 11175698 (Conn. Super. Ct. Mar. 8, 2011), the Connecticut Superior Court found that the plaintiff had no clear entitlement to a subsequently revoked allocation of water service as a result of the discretion granted by Conn. Gen. Stat. § 7-247 where no fraud, oppression, or arbitrary action on the part of the WPCA was shown.  *Id.* at *7.  It follows that if an individual lacks a vested property right in a sewer extension, he must also lack a vested property right in the design of the sewer extension that a WPCA chooses to provide.  Thus, the property interest Plaintiff alleges is not cognizable under the Due Process Clause.

Furthermore, even if Plaintiff had alleged a protected property interest, it is not clear that the alleged deprivation of that interest occurred without due process. Although Plaintiff's Amended Complaint is not explicit as to what process he alleges was denied, at oral argument, Plaintiff's counsel clarified that the gravamen of his procedural due process claim was that the hearings he was provided were pro forma and the WPCA ignored his presentations. However, an allegation that the WPCA chose not to accept Plaintiff's arguments during the hearings is simply insufficient to support his claim for deprivation of constitutional due process. In the Amended Complaint, Plaintiff acknowledges that he had the opportunity to present an alternative proposal to the WPCA and its members during the course of at least four public hearings. At these hearings he was permitted to present expert evidence and testimony and to submit price estimates for his alternative proposal. (*See* Am. Compl. ¶¶ 28–31.) Given his multiple opportunities to address the WPCA on this topic, he received the process to which he was entitled. The Court therefore grants Defendants' motion to dismiss Plaintiffs' federal procedural due process claim.

### C.     Federal Takings Claim (Count Five)

Plaintiff alleges that the terms of the Grinder Pump License Agreement, which required Plaintiff to grant Defendants a right of access to his property, constituted an unconstitutional taking. Defendants maintain that Plaintiff's claim is not ripe for review.

The Supreme Court first set forth the ripeness test for land use cases in *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172 (1985), which involved a Takings Clause challenge to a local planning commission's refusal to approve a subdivision in the form requested by a developer. The Supreme Court reversed a judgment in the developer's favor because the developer had "not yet obtained a final

decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation." *Id.* at 186. Thus, *Williamson* established a two-prong test in Takings Clause cases. First, because a plaintiff in a regulatory takings case must establish that he has "been denied all reasonable beneficial use of the property," he or she must show that he or she has pursued all necessary steps to obtain a final determination from the relevant land use authorities, including requesting variances, where available. *Id.* at 190. Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause," and therefore a plaintiff's claim is not ripe until he or she has sought and been denied compensation through available state procedures. *Id.* at 195. To date, Plaintiff has refused to sign the Grinder Pump License Agreement or to pay the proposed assessment, and his appeal of the WPCA's assessment is currently pending. Because this appeal remains pending, Plaintiff cannot show that he has received a final determination from the relevant land use authorities or fully pursued compensation through available state procedures. Therefore, his claim is not ripe for review, and the Court grants Defendants' motion to dismiss as to Plaintiff's federal takings claim.

### D.    42 U.S.C. § 1985 (Count Seven)

Plaintiff also alleges a claim, pursuant to 42 U.S.C. § 1985, that Defendants engaged in a civil rights conspiracy by refusing to adopt his proposal. Only § 1985(3) can be applicable to this action.[5] In order to state a claim under Section 1985(3), Plaintiff must allege: (1) the Defendants were part of a conspiracy; (2) the purpose of the

---

[5] 42 U.S.C. § 1985(1) addresses claims that a government official has been prevented from performing his duties, and 42 U.S.C. § 1985(2) addresses claims of obstruction of justice.

conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971). Importantly, Plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Id.* at 102. Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. *See id.* at 101–02.

Plaintiff alleges no facts suggesting that the actions of any Defendant were taken because of his race or other class-based discriminatory animus, and at oral argument, Plaintiff's counsel admitted that he makes no such argument. Thus, Plaintiff fails to state a claim cognizable under § 1985(3), and Defendant's motion to dismiss Plaintiff's § 1985 claim is granted.

    E.    *Monell* **Claim (Count Eight)**

In Count Eight, Plaintiff alleges a *Monell* claim for municipal liability against the WPCA in that its actions imply a de facto policy, practice, and custom to exhibit deliberate indifference to the constitutional rights of the citizens of the Town. Because the Court has dismissed each of Plaintiff's constitutional claims, Plaintiff's *Monell* claim against the WPCA must also be dismissed. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v.*

*City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, Defendants' motion to dismiss is granted as to Plaintiff's *Monell* claim.

### F. State Law Claims

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state constitutional claims for equal protection, due process and takings, and state statutory and common law claims for reckless disregard, municipal indemnification, and violation of Conn. Gen. Stat. § 8-24. *See* 28 U.S.C. § 1367(c)(3); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

### IV. Conclusion

For the foregoing reasons, Defendants' Motion [Doc. # 27] to Dismiss is GRANTED as to Plaintiff's federal claims and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of June, 2013.